**George ELWOOD, Administrator of the Estate of Beatrice A. Van Loan, Plaintiff,**

v.

**CITY OF NEW YORK, Defendant.**
**No. 62 Civ. 2562.**

United States District Court
S. D. New York.

June 20, 1967.

Louis B. Scheinman, Woodbourne, N. Y., for plaintiff.

J. Lee Rankin, Corporation Counsel of City of New York, Kingston, N. Y., for defendant; George Newman, New York City, Theodore R. Lee, Francis T. Murray, Kingston, N. Y., of counsel.

MEMORANDUM

BONSAL, District Judge.

Plaintiff moves pursuant to Rule 12 (c), F.R.Civ.P., for judgment on the pleadings in the above entitled action and pursuant to Rule 56(c) for summary judgment. Defendant moves pursuant to Rule 12(b) to dismiss the action for failure to state a claim upon which relief can be granted, and for lack of jurisdiction because there is no diversity of citizenship and the amount in controversy is less than $10,000. In addition, defendant moves for judgment on the pleadings and summary judgment.

In State of New Jersey v. State of New York, 283 U.S. 805, 51 S.Ct. 562, 75 L.Ed. 1425 (1931), the State and City of New York were permitted to divert the equivalent of 440 million gallons of water daily from the Delaware River or its tributaries subject to the conditions specified in the Supreme Court Decree. In 1950, subject to appropriate modification of the Supreme Court Decree, the New York Water Power and Control Commission approved the diversion by the City of New York of an additional 360 million gallons daily from these sources. In 1952, the City filed a petition with the Supreme Court to modify the 1931 Decree accordingly. Answers were interposed by New Jersey and Pennsylvania, and a Special Master was appointed. In 1954, the Supreme Court handed down an Amended Decree authorizing the additional diversion upon the completion and commencement of operation of the East Branch reservoir and the completion of a dam and reservoir on the West Branch of the Delaware River at Cannonsville, New York and subject to other conditions specified in the Amended Decree.

In 1952 the State of New York proposed that the new dams be constructed and operated by a Delaware River Basin Water Commission acting pursuant to an interstate compact (see, McKinney's, Vol. 65, Part I, Unconsolidated Laws, 1966 Supp., Sec. 1581). This compact never came into effect. In 1956 the City of New York began construction of the Cannonsville Dam. In 1961 a Delaware River Basin Compact was entered into by Delaware, New York, New Jersey, and Pennsylvania, approved by Congress, and signed by President Kennedy on September 27, 1961. The 1961 compact provides that the commission created thereunder cannot "[e]xercise any jurisdiction * * * over * * facilities constructed or used in connection with withdrawals, diversions and releases of waters of the basin" authorized by the 1954 Amended Decree. McKinney's 1961 Session Laws of New York, Ch. 148, Part I, Art. 3, Sec. 3.5(c). The Cannonsville Dam was completed and the City began to divert the waters of the West Branch in 1966.

This diversity action was commenced in 1962 by Beatrice Van Loan, a citizen of Pennsylvania and the owner of a farm on the West Branch of the Delaware River, the plaintiff alleging that her riparian rights would be violated upon completion of the Cannonsville Dam and the diversion of the waters of the West Branch. Plaintiff sought to enjoin completion of the dam until such time as the City of New York made provision to compensate Pennsylvania riparian owners for the loss of water. In November, 1963, Judge McLean dismissed the complaint "with leave to plaintiff to file an amended complaint seeking money damages after the dam has been completed and the diversion of water has actually occurred."

Mrs. Van Loan died testate on May 12, 1965 and on December 2, 1965 George Elwood was appointed administrator of the estate d. b. n., c. t. a. Mrs. Van Loan devised the farm to one Edward Mohansic under an agreement whereby Mohansic was to receive her farm if he continued to care for her during her natural life. Mohansic released all interest in the property of Mrs. Van Loan by deed dated February 12, 1966 to plaintiff Elwood.

On March 16, 1966, pursuant to stipulation, Elwood was substituted as plain-

tiff herein, and on May 31, 1966 Elwood's motion for leave to file and serve an amended complaint was granted by Judge Wyatt. On November 12, 1966 Elwood sold the Van Loan farm at public auction for $15,200, reserving from the sale all rights against the City of New York arising from the diversion of the West Branch of the Delaware River.

In the amended complaint plaintiff alleges that on or about March 15, 1966, the City of New York commenced the permanent diversion of the waters of the West Branch resulting in a substantial diminution in the market value of plaintiff's farm. In an affidavit in support of his motion, plaintiff states that the farm would have sold for more than $30,000 at the November 12, 1966 public auction had the diversion not taken place.

In its answer to the amended complaint, the City interposes a general denial except that it admits that on March 15, 1966 it commenced the withdrawal of water from the Cannonsville reservoir. In addition, the City asserts seven defenses: (1) that the amended complaint fails to state a claim on which relief can be granted; (2) that the plaintiff is not the real party in interest; (3) that the Supreme Court still retains jurisdiction over the diversions of water from the Delaware River and its tributaries; (4) that the plaintiff is bound under the doctrine of *parens patriae* by Pennsylvania's consent to the Amended Decree; (5) that the Amended Decree is *res judicata* on the questions of the reasonableness of the City's diversion and the possibility of damage resulting therefrom; (6) that the Delaware River at the location of plaintiff's property is a navigable stream and, therefore, its waters at that point are public and subject to the paramount rights of Pennsylvania and New York; and (7) that plaintiff's action is barred for failure to comply with the Administrative Code of the City of New York in instituting this action.

In his memorandum dismissing the original complaint with leave to amend, Judge McLean stated that the 1954 Amended Decree did not involve the rights of individual property holders and did not purport to exclude those rights from consideration by the District Court, and held that insofar as the jurisdictional amount was concerned, the allegation in the complaint was sufficient. The Attorney General of Pennsylvania appeared *amicus curiae* and stated that in his opinion Pennsylvania had not altered or affected the rights of riparian owners by consenting to the Amended Decree, noting that New York had compensated its own citizens whose property had lost value as a result of the diversions authorized in the Amended Decree.

 In granting plaintiff's motion to serve and file an amended complaint, Judge Wyatt held that diversity existed at the time the action was commenced and jurisdiction was not affected by the subsequent substitution of a non-diverse party. Moreover, it appears that under Pennsylvania law a riparian owner can assert a claim for damages by reason of the interference with the natural flow of a stream by upstream owners. James v. West Chester Borough, 220 Pa. 490, 69 A. 1042 (1908). Under New York law, the City of New York may be sued for tortious damage to real property. General Municipal Law of New York, § 50 et seq.

 However, since there are questions of fact as to whether the Delaware River is "navigable" at the location of the plaintiff's property, as to the exact nature of the plaintiff's interest, and as to whether plaintiff has suffered any damages, the cross motions for summary judgment are denied. Moreover, this action raises complex legal issues which can best be resolved after a full trial on the merits.

All motions are denied.

It is so ordered.